**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MAXIMO SANDOVAL, Jr.,

      Petitioner,                        Civil No. 2:10-CV-11444
                                               HONORABLE ARTHUR J. TARNOW

v.

JEFFREY WOODS,

      Respondent,

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING
LEAVE TO APPEAL IN FORMA PAUPERIS**

      Maximo Sandoval, Jr., ("Petitioner"), presently confined at the Kinross

Correctional Facility in Kincheloe, Michigan, has filed a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  In his application, filed *pro se*, petitioner challenges his

convictions for second-degree criminal sexual conduct, M.C.L.A. 750.520c(1)(f); and

being a fourth felony habitual offender, M.C.L.A. 769.12.  For the reasons that follow,

the petition for writ of habeas corpus is DENIED.

## I.  Background

      Petitioner was convicted of the above offenses following a jury trial in the Tuscola

County Circuit Court.[1]  This Court recites verbatim the relevant facts relied upon by the

Michigan Court of Appeals, which are presumed correct on habeas review pursuant to

28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

---

    [1]  Petitioner was acquitted of two counts of first-degree criminal sexual conduct.

1

*Sandoval v. Woods,* 2:10-CV-11444

In the summer of 2005, defendant, then a 25 year-old male, knocked on the victim's window at 2 a.m.   The victim, then a 13 year-old girl who is developmentally delayed, knew the defendant because his parents lived in her neighborhood and because she worked with defendant at a local farm. When the victim heard the knocking, she went to the door and opened it. When she saw defendant, she went outside.  Defendant and the victim went to his parents' house and the two entered the back of defendant's mother's van, where they kissed.  Defendant then touched the victim's breasts and her vagina and the victim told him to stop.  Defendant refused and called the victim derogatory names.  The victim tried to leave the van, but defendant pulled her back into the van. Defendant, having pulled his pants down, then grabbed the victim's head and forced her to perform fellatio on him twice. The victim told defendant to stop, but he refused and continued to push her head down.   Sometime during these events, the victim tried to push defendant off her and defendant tried to choke her.  The victim got out of the van and ran home.  Once the victim returned home, the victim's mother called the police and the victim submitted to a sexual assault examination and rape kit.  The examiner found saliva on the victim's chest, which was collected and sent for DNA testing.  Defendant's DNA matched the DNA collected from the victim's chest.

Defendant was arrested on August 22, 2006 (sic).  Defendant was then incarcerated on parole detainer and remained incarcerated during the pendency of this matter.  Trial was set for February 14, 2006.  However, on February 13, 2006 the charges were dismissed without prejudice because the DNA analysis had not yet been completed.  The prosecutor refiled the charges on May 12, 2006 and defendant was arraigned and "rearrested" on June 5, 2006.  After a pretrial in October 2006, the matter was brought to trial on January 9, 2007.  At trial, defendant presented an alibi defense, alleging that he was sleeping at his sister's house at the time of the event.  The victim testified according to the facts above.  The victim also indicated that she has been angry, embarrassed, and afraid as a result of the incident and that she sought counseling after the incident.

*People v. Sandoval,* No. 277509, * 1-2 (Mich.Ct.App. December 4, 2008).

Petitioner's conviction was affirmed but the case was remanded for re-

sentencing. *Id., lv. den.* 483 Mich. 980, 764 N.W.2d 237 (2009).  On remand,

petitioner's sentences of twenty to sixty years in prison was reduced to eighteen to sixty

years in prison.  The Michigan Court of Appeals affirmed petitioner's new sentence.

2

*Sandoval v. Woods,* 2:10-CV-11444

*People v. Sandoval,* No. 291626 (Mich.Ct.App. June 15, 2010); *lv. den.* 488 Mich. 873, 788 N.W.2d 454 (2010).

In his original and amended habeas petitions, petitioner seeks habeas relief on the following grounds:

I.  The State of Michigan denied the petitioner's right to a speedy trial 180-day rule (M.C.L. 780.131 and M.C.R. 6.004(D)), on claims that the Michigan Department of Corrections (M.D.O.C.) never sent the required notice by certified mail as required. *Id.* The State of Michigan is in direct violation of federal and constitutional law for denying petitioner's U.S. Constitutional rights, 6th and 14th Amendments.

II.  Petitioner's convictions should be overturned because there was insufficient credible evidence at trial to prove petitioner is guilty of the crimes.

III. The petitioner's sentences are invalid because they are based on "inaccurate" information, i.e., improper scoring of the legislatively imposed burden of proof and insufficient facts; therefore, his due process rights were violated.

IV.  The State of Michigan erred by enhancing petitioner's guideline with subsequent enhancements by using a prior misdemeanor conviction for which petitioner was not advised of his rights to an attorney nor represented by one.   Therefore, violating petitioner's 6th and 14th Amendment constitutional rights.

V.  Petitioner received ineffective assistance of trial counsel.

VI. Petitioner's sentences are invalid because they are based on inaccurate information, improper scoring of the legislatively imposed burden of proof and insufficient facts, which requires petitioner to re-raise this issue (O.V. 11) at state level after remand in the interest of justice and violation of his due process rights. 14th Amend.

VII. Petitioner should be entitled to 496 days toward his minimum sentence which he accumulated while being detained by the M.D.O.C. due to being on parole when arrested for this case.   Failure to grant credit toward his minimum sentence violates Michigan law regarding consecutive sentencing and jail credit, constitutional double jeopardy, due process, and equal

3

*Sandoval v. Woods,* 2:10-CV-11444

protection guarantees that were violated when he received no credit against the new sentence for a crime committed on parole.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

4

*Sandoval v. Woods,* 2:10-CV-11444

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III.  Discussion

**A.  The State of Michigan denied the petitioner's right to a speedy trial 180-day rule (M.C.L. 780.131 and M.C.R. 6.004(D)), on claims that the Michigan Department of Corrections (M.D.O.C.) never sent the required notice by certified mail as required. *Id.*  The State of Michigan is in direct violation of federal and constitutional law for denying petitioner's U.S. Constitutional rights, 6th and 14th Amendments.**

Petitioner first claims that his right to a speedy trial was violated and that he was brought to trial in violation of the 180 day rule as set forth in M.C.L.A. 780.131 and M.C.R. 6.004(d).

Petitioner is not entitled to habeas relief on his claim that his right to a speedy trial was deprived because he was brought to trial in violation of Michigan's 180 day rule set forth in M.C.L.A. 780.131 and M.C.R. 6.004(d) because it is essentially a state

5

*Sandoval v. Woods,* 2:10-CV-11444

law claim. *See Burns v. Lafler,* 328 F. Supp. 2d 711, 722 (E.D. Mich. 2004).  A violation of a state speedy trial law by state officials, by itself, does not present a cognizable federal claim that is reviewable in a habeas petition. *Burns,* 328 F. Supp. 2d at 722 (citing *Poe v. Caspari*, 39 F. 3d 204, 207 (8th Cir. 1994); *Wells v. Petsock*, 941 F. 2d 253, 256 (3rd Cir. 1991)). Petitioner's allegation that the State of Michigan violated its own 180 day rule would therefore not entitle him to habeas relief. *Id.*

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. U.S. Const. Amend. VI.  To determine whether a speedy trial violation has occurred, the court must consider the following four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  No single factor is determinative, rather a court must weigh them and engage in a "difficult and sensitive balancing process" to determine whether a constitutional violation has occurred. 407 U.S. at 533.  The right to a speedy trial "is 'amorphous,' 'slippery,' and 'necessarily relative.'" *Vermont v. Brillon,* 129 S. Ct. 1283, 1290 (2009)(quoting *Barker*, 407 U.S., at 522)(quoting *Beavers v. Haubert*, 198 U.S. 77, 87 (1905)).

The length of delay is a "triggering factor" because "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker,* 407 U.S. at 530.  Therefore, to trigger a speedy trial analysis, the accused must allege that the interval between the accusation and the trial has crossed the threshold dividing ordinary from presumptively prejudicial delay. *Doggett v. United States,* 505 U.S. 647, 651-52 (1992).  Courts have generally found

6

*Sandoval v. Woods,* 2:10-CV-11444

postaccusation delays that approach one year to be "presumptively prejudicial". *Id.* 505 U.S. at 652, n. 1; *United States v. Brown,* 90 F. Supp. 2d 841, 846 (E.D. Mich. 2000).

Petitioner was originally arrested on August 22, 2005, but the charges were dismissed without prejudice on February 13, 2006. Petitioner was re-charged on May 12, 2006 and was "rearrested" on the new charges on June 5, 2006. Petitioner was brought to trial on January 9, 2007. Although petitioner argues that the delay in bringing him to trial should be measured from the time that he was arrested for the original charges on August 22, 2005, these charges were dismissed on February 13, 2006. The speedy trial guarantee is not implicated when criminal charges are formally dropped against a defendant. *See U.S. v. Atisha,* 804 F. 2d 920, 928-29 (6th Cir. 1986)(citing *United States v. Marion*, 404 U.S. 307, 313 (1971)). Thus, this Court can only judge the constitutionality of the delay in bringing petitioner to trial between the date that petitioner was re-charged with the crimes on June 5, 2006 and the time that he was brought to trial some seven months later on January 9, 2007. *Id.* at 929. This delay in bringing petitioner to trial was not presumptively prejudicial. *See United States v. Cope,* 312 F. 3d 757, 778 (6th Cir. 2002)(eight-month and three week delay between accusation and beginning of two defendants' trial was not presumptively prejudicial under Speedy Trial Clause, given seriousness and complexity of case); *Norris v. Schotten,* 146 F. 3d 314, 328 (6th Cir. 1998)(eight month delay insufficient to presume prejudice). Because petitioner has failed to establish that his seven month delay was presumptively prejudicial, it would be unnecessary for this Court to inquire into the other *Barker* factors. *United States v. Cope,* 312 F. 3d at 778. Simply put, petitioner is

7

*Sandoval v. Woods,* 2:10-CV-11444

not entitled to habeas relief because the seven month delay between his re-arrest and his trial is not presumptively prejudicial. *See Wilson v. Mitchell,* 61 Fed. Appx. 944, 946 (6th Cir. 2003).

Petitioner's speedy trial claim would also fail because there is no evidence on the record that any part of this delay was intentionally caused by the trial court or the prosecution. *Norris v. v. Schotten*, 146 F. 3d at 327-28; *Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 748 (E.D. Mich. 2005).  There is nothing in the record to indicate a "willful attempt" by the prosecution to delay the trial, *Burns v. Lafler,* 328 F. Supp. 2d at 722 (quoting *Davis v. McLaughlin*, 122 F. Supp. 2d 437, 443 (S.D.N.Y. 2000)), nor is there any evidence that the prosecution intentionally delayed the trial to gain a tactical advantage over the petitioner. *Id.*  Indeed, the only apparent reason for the slight delay in bringing petitioner to trial was docket congestion.  Although government delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government under *Barker,* more neutral reasons such as negligence or overcrowded dockets weigh against the state less heavily. *See Vermont v. Brillon,* 129 S. Ct. at 1290; *Barker,* 407 U.S. at 531.

Petitioner has also failed to show that he was prejudiced by the seven month delay in bringing him to trial. *Burns,* 328 F. Supp. 2d at 722.  Of the four factors to be assessed in determining whether a defendant's speedy trial rights have been violated, prejudice to the defendant is the most critical one. *See Trigg v. State of Tenn.,* 507 F. 3d 949, 954 (6th Cir. 1975)

8

*Sandoval v. Woods,* 2:10-CV-11444

The relevant forms of prejudice in speedy trial cases are: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) the possibility that the defendant's defense will be impaired by dimming memories and loss of exculpatory evidence. *Doggett*, 505 U.S. at 654 (*quoting Barker*, 407 U.S. 514 at 532).

Petitioner is unable to establish any prejudice from the first form of prejudice because he was already incarcerated for his parole violation. *See U.S. v. Brown*, 498 F.3d 523, 532 (6th Cir. 2007). With respect to the second form of prejudice, petitioner is likewise unable to establish the second form of prejudice, because he has failed to allege that he suffered anything more than minimal anxiety from the delays. *See Norris,* 146 F. 3d at 328.

Petitioner's main contention is that his defense was prejudiced because the prosecutor delayed disclosing the results of the DNA tests, thereby preventing him from obtaining an expert to repeat the DNA analysis. On December 11, 2006, the trial court ordered the prosecution to produce the DNA evidence within 10 days. The trial court, in fact, had appointed an independant expert in DNA to review the prosecution's DNA expert. As the Michigan Court of Appeals noted in rejecting petitioner's claim, had petitioner needed more time for the expert to analyze the results, he could have requested an adjournment. Because petitioner has failed to show that he was prejudiced by the seven month delay in bringing him to trial, he is not entitled to habeas relief on his first claim.

9

*Sandoval v. Woods,* 2:10-CV-11444

**B.   Petitioner's convictions should be overturned because there was insufficient credible evidence at trial to prove petitioner is guilty of the crimes.**

Petitioner next contends that there was insufficient evidence to convict him of second-degree criminal sexual conduct.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19(internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011).

10

*Sandoval v. Woods,* 2:10-CV-11444

"Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir.2003).

Petitioner was convicted of second-degree criminal sexual conduct involving personal injury. M.C.L.A. 750.520c(1)(f) indicates that a defendant commits second-degree criminal sexual conduct if:

> The actor causes personal injury to the victim and force or coercion is used to accomplish the sexual contact. Force or coercion includes, but is not limited to, any of the circumstances listed in section 520b(1)(f).

The term "personal injury," for purposes of Michigan's criminal sexual conduct statutes, is defined as "bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ." M.C.L.A. 750.520a(j). Under Michigan law, physical injuries need not be permanent or

11

*Sandoval v. Woods,* 2:10-CV-11444

substantial to satisfy the personal injury element of M.C.L.A. 750.520b(1)(f). *See*

*People v. Mackle*, 241 Mich. App. 583, 596; 617 N.W.2d 339 (2000). Bruises to a

sexual assault victim are sufficient to satisfy the personal injury element of first-degree

criminal sexual conduct. *See People v. Himmelein,* 177 Mich. App. 365, 377; 442 N.W.

2d 667 (1989). Further, an assault upon a sexual assault victim immediately prior to a

series of sexual assaults is sufficient to supply the element of personal injury with

respect to a first-degree criminal sexual conduct conviction under § 520b(1)(f). *See*

*People v. Martinez,* 190 Mich. App. 442, 44-45; 476 N.W. 2d 641 (1991); *People v.*

*Hunt,* 170 Mich. App. 1, 8-9; 427 N. W. 2d 907 (1988).

The term "mental anguish," for purposes of the first-degree criminal sexual

conduct statute, does not mean something more than the emotional distress

experienced by the "'average' rape victim." *See People v. Petrella,* 424 Mich. 221, 258;

380 N.W. 2d 11 (1986). "[I]n order to support a conviction of first-degree CSC, based

on the aggravating factor of mental anguish, the prosecution is required to produce

evidence from which a rational trier of fact could conclude, beyond a reasonable doubt,

that the victim experienced extreme or excruciating pain, distress, or suffering of the

mind." *Id.* at 259. Although not exhaustive, the Michigan Supreme Court suggested

that the following factors could be used to determine whether the victim suffered from

mental anguish as a result of the sexual penetration [or assault]:

> (1) Testimony that the victim was upset, crying, sobbing, or hysterical during or
> after the assault.
> (2) The need by the victim for psychiatric or psychological care or treatment.
> (3) Some interference with the victim's ability to conduct a normal life, such as
> absence from the workplace.

12

*Sandoval v. Woods,* 2:10-CV-11444

(4) Fear for the victim's life or safety, or that of those near to her.
(5) Feelings of anger and humiliation by the victim.
 (6) Evidence that the victim was prescribed some sort of medication to treat her anxiety, insomnia, or other symptoms.
(7) Evidence that the emotional or psychological effects of the assault were long-lasting.
(8) A lingering fear, anxiety, or apprehension about being in vulnerable situations in which the victim may be subject to another attack.
(9) The fact that the assailant was the victim's natural father.

*People v. Petrella,* 424 Mich. at 270-71.

In the present case, there was sufficient evidence for a rational trier of fact to conclude beyond a reasonable doubt that petitioner committed the offense of second-degree criminal sexual conduct.  The victim testified that petitioner touched her breasts and her vagina and the victim told him to stop.  Petitioner refused to desist and began calling the victim derogatory names.  When the victim tried to leave petitioner's van, petitioner pulled her back inside.  Petitioner grabbed the victim's head and forced her to perform fellatio on him twice, even though she told him to stop.  During the assault, the victim tried to push petitioner off of her and petitioner tried to choke her.  The victim also testified that she had been angry, embarrassed, and fearful as a result of the incident and that she sought counseling after the incident.

When viewed in a light most favorable to the prosecution, the evidence established that petitioner used force or coercion to sexually assault the victim and that he caused her personal injury, namely, mental anguish.

To the extent that petitioner claims that the evidence is legally insufficient because the victim was not credible, had a motive to lie, that her testimony was uncorroborated, and that there were problems with the DNA evidence, petitioner would

13

*Sandoval v. Woods,* 2:10-CV-11444

not be entitled to habeas relief on this basis.  Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F. 3d 594, 618 (6th Cir. 2002)(internal citation omitted). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F. 3d 265, 286 (6th Cir. 2000).  The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.*  Any insufficiency of evidence claim that rests on an allegation of the victim's credibility, which is the province of the finder of fact, does not entitle a habeas petitioner to relief. *See Tyler v. Mitchell,* 416 F. 3d 500, 505 (6th Cir. 2005).

Additionally, the fact that the victim's testimony was uncorroborated does not render the evidence in this case insufficient.  The testimony of a sexual assault victim alone is sufficient to support a criminal defendant's conviction. *See United States v. Howard,* 218 F. 3d 556, 565 (6th Cir. 2000)(citing *Gilbert v. Parke,* 763 F. 2d 821, 826 (6th Cir. 1985)).  The victim's testimony that petitioner touched her breasts and vagina several times, that he did so with force or coercion, and that she suffered a personal injury was sufficient to sustain petitioner's second-degree criminal sexual conduct convictions, notwithstanding any lack of evidence to corroborate the victim's testimony. *See e.g. O'Hara v. Brigano,* 499 F. 3d 492, 500 (6th Cir. 2007).  Petitioner is not entitled to habeas relief on his second claim.

*Sandoval v. Woods,* 2:10-CV-11444

**C.    The petitioner's sentences are invalid because they are based on "inaccurate" information, i.e., improper scoring of the legislatively imposed burden of proof and insufficient facts; therefore, his due process rights were violated.**

**Petitioner's sentences are invalid because they are based on inaccurate information, improper scoring of the legislatively imposed burden of proof and insufficient facts, which requires petitioner to re-raise this issue (O.V. 11) at state level after remand in the interest of justice and violation of his due process rights. 14th Amend.**

In his third and eighth claims, petitioner contends that several of the offense variables under the Michigan Sentencing Guidelines were incorrectly scored at both his original sentencing and at his re-sentencing.

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim. *See Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007)*; Howard v. White,* 76 Fed. Appx. 52, 53 (6th Cir. 2003); *Whitfield v. Martin,* 157 F. Supp. 2d 758, 762 (E.D. Mich. 2001). "Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009).  "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004).  Any error by the trial court in calculating his guideline score would not merit habeas relief. *Id.*

15

*Sandoval v. Woods,* 2:10-CV-11444

Petitioner, however, contends that the trial court judge violated his Sixth Amendment right to a trial by jury by using factors to his sentencing guidelines which had not been submitted to a jury and proven beyond a reasonable doubt or admitted to by petitioner.

In support of his claim, petitioner relies on the case of *Blakely v. Washington,* 542 U.S. 296 (2004)*,* in which the Supreme Court has held that other than the fact of a defendant's prior conviction, any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Id.* at 301 (*citing Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

The problem with petitioner's reliance on *Blakely* is that the case in *Blakely* involved a trial court's departure from Washington's determinate sentencing scheme. Michigan, by contrast, has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum sentence.  The maximum sentence is not determined by the trial judge but is set by law. See *People v. Drohan,* 475 Mich. 140, 160-61; 715 N.W. 2d 778 (2006); *cert. den. sub nom Drohan v. Michigan,* 127 S. Ct. 592 (2006); *People v. Claypool,* 470 Mich. 715, 730, n. 14; 684 N.W. 2d 278 (2004)(both citing M.C.L.A. 769.8).  "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161.  Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255, n. 7; 666

16

*Sandoval v. Woods,* 2:10-CV-11444

N.W. 2d 231 (2003)(citing M.C.L.A. 769.34(2)).  Under Michigan law, the trial judge

sets the minimum sentence, but can never exceed the maximum sentence. *Claypool,*

470 Mich. at 730, n. 14.  Michigan's indeterminate sentencing scheme is therefore

unaffected by the U.S. Supreme Court's holding in *Blakely. Drohan,* 475 Mich. at 164.

The decision in *Blakely* has no application to petitioner's sentence.

Indeterminate sentencing schemes, unlike determinate sentencing schemes, do not

infringe on the province of the jury. *See Blakely*, 542 U.S. at 304-05, 308-09. This was

made clear in *Cunningham v. California*, 549 U.S. 270 (2007), where the Supreme

Court explained that states may retain determinate sentencing by requiring the jury "to

find any fact necessary to the imposition of an elevated sentence" or by allowing

judges " 'to exercise broad discretion ... within a statutory range,' which 'everyone

agrees,' encounters no Sixth Amendment shoal." *Id.* at 294 (quoting *United States v.*

*Booker*, 543 U.S. 220, 233 (2005)); *See also Harris v. United States*, 536 U.S. 545,

565 (2002)("[w]hether chosen by the judge or the legislature, the facts guiding judicial

discretion below the statutory maximum need not be alleged in the indictment,

submitted to the jury, or proved beyond a reasonable doubt" and the judge "may

impose the minimum, the maximum, or any other sentence within the range without

seeking further authorization from those [grand and petit] juries-and without

contradicting *Apprendi*."), and *Id.* at 569-70 (Breyer, J., concurring)(agreeing that

"*Apprendi* does not apply to mandatory minimums.").

The holdings in *Apprendi* and *Blakely* do not apply to judicial factfinding that

increases a minimum sentence so long as the sentence does not exceed the

17

*Sandoval v. Woods,* 2:10-CV-11444

applicable statutory maximum. *See Chontos v. Berghuis,* 585 F. 3d 1000, 1002 (6th Cir.

2009); *See also Montes v. Trombley,* 599 F.3d 490, 495 (6th Cir. 2010)(the

*Blakely-Apprendi* rule requiring any fact that increases the penalty for a crime beyond

the prescribed statutory maximum to be submitted to a jury and proved beyond a

reasonable doubt does not apply to laws that set the maximum sentence by statute but

that permit a judge to determine the minimum sentence through judicial factfinding, and

does not preclude a judge from utilizing the preponderance-of-the-evidence standard

when finding facts related to sentencing).  As noted by the Sixth Circuit, "[T]he Sixth

Amendment gives a criminal defendant the right to have a jury find any fact that

increases the *maximum* sentence the defendant faces, not any fact that increases the

*minimum* sentence." *Arias v. Hudson*, 589 F.3d 315, 317 (6th Cir. 2009)(citing *McMillan*

*v. Pennsylvania*, 477 U.S. 79 (1986))(emphasis original).  Indeed, "[B]y clarifying that

minimum sentences fall outside *Apprendi's* scope, *Harris* forecloses [petitioner's]

claim." *Chontos,* 585 F. 3d at 1002.  Petitioner is not entitled to relief on his third and

sixth claims.

> **D.    The State of Michigan erred by enhancing petitioner's
> guideline with subsequent enhancements by using a prior
> misdemeanor conviction for which petitioner was not advised
> of his rights to an attorney nor represented by one.
> Therefore, violating petitioner's 6th and 14th Amendment
> constitutional rights.**

Petitioner next contends that the trial court improperly used a 1999

misdemeanor conviction for operating under the influence of liquor to enhance his

18

*Sandoval v. Woods,* 2:10-CV-11444

sentence as an habitual offender and to score his sentencing guidelines, because he was not advised of his right to counsel or represented by an attorney when he pleaded guilty to that offense.  The Michigan Court of Appeals rejected petitioner's claim, because petitioner had not received a term of imprisonment for that offense. *Sandoval,* No. 277509, at * 4.

In a criminal case in which no sentence of imprisonment was imposed, a defendant charged with a misdemeanor has no constitutional right to the assistance of counsel. *See Nichols v. U.S.*, 511 U.S. 738, 743 (1994)(citing *Scott v. Illinois*, 440 U.S. 367 (1979)).  An uncounseled misdemeanor conviction, valid due to the absence of the imposition of a jail or prison term, is also valid when used to enhance punishment for a subsequent conviction. *Id.* at 746-47.  Because petitioner was not sentenced to a term of incarceration for his uncounseled misdemeanor offense, this offense could validly be used to enhance his current sentence.  Petitioner is not entitled to relief on his fourth claim.

**E.     Petitioner received ineffective assistance of trial counsel.**

Petitioner next contends that he was deprived of the effective assistance of counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687

19

*Sandoval v. Woods,* 2:10-CV-11444

(1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

Petitioner first contends that trial counsel was ineffective for failing to file a motion to dismiss based upon a perceived violation of Michigan's 180 day rule.

The Michigan Court of Appeals rejected petitioner's claim that Michigan's 180 day rule had been violated, by noting that petitioner himself had conceded that the Michigan Department of Corrections never sent a written notice as required by M.C.L.A. 780.131 to trigger the provisions of the 180 day rule.

Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)(quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)).  Because the Michigan Court of Appeals determined that there had been no violation of Michigan's 180 day rule when bringing petitioner to trial, this Court must defer to that determination in resolving petitioner's ineffective assistance of counsel claim. *See Brooks v. Anderson*, 292 Fed. Appx. 431, 437-38 (6th Cir. 2008); *Adams v. Smith*, 280 F. Supp. 2d 704, 721 (E.D. Mich. 2003).  Because the Michigan Court of

20

*Sandoval v. Woods,* 2:10-CV-11444

Appeals determined that the 180 day rule had not been violated in this case, petitioner is unable to establish that he was prejudiced by counsel's failure to file a motion to dismiss on this basis.

Petitioner next contends that trial counsel was ineffective for failing to have the DNA results obtained by the police re-tested to assure their accuracy or for failing to file a motion sooner to compel the prosecutor to disclose the DNA evidence so that it could be tested.

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). Petitioner has provided this Court no evidence that the re-testing of the DNA evidence would have produced exculpatory evidence or lead to a different result of his case. Petitioner is not entitled to habeas relief on this portion of his claim.

Petitioner last contends that trial counsel was ineffective for failing to object to the victim being asked leading questions.

It is permissible for a prosecutor to ask leading questions on direct examination when questioning certain witnesses, including a child sexual abuse victim. *See Jordan v. Hurley,* 397 F. 3d 360, 363 (6th Cir. 2005). Because the victim here was a fourteen year old, developmentally disabled complainant who was alleging that she had been sexually assaulted, it was probably permissible for the prosecutor to ask her leading questions. In any event, petitioner's ineffective assistance of counsel claim must fail, because he has not argued that the victim's testimony which had been obtained by the

21

*Sandoval v. Woods,* 2:10-CV-11444

prosecutor's leading questions would have been inadmissible had it been elicited

through  non-leading questions. *See Burke v. United States,* 261 F. Supp. 2d 854, 861

(E.D. Mich. 2003).  Rather, the questions posed by the prosecution could have simply

been rephrased. *Id.*  Petitioner is not entitled to habeas relief on his fifth claim.

> **F.    Petitioner should be entitled to 496 days toward his minimum
> sentence which he accumulated while being detained by the
> M.D.O.C. due to being on parole when arrested for this case.  Failure
> to grant credit toward his minimum sentence violates Michigan law
> regarding consecutive sentencing and jail credit, constitutional
> double jeopardy, due process, and equal protection guarantees that
> were violated when he received no credit against the new sentence
> for a crime committed on parole.**

Petitioner lastly claims that the trial court erred in failing to credit him 496 days

jail credit for the time that he spent in jail from the date that he was initially arrested for

these offenses.

A federal court may grant a writ of habeas corpus only if the petitioner "is in

custody in violation of the Constitution or laws or treaties of the United States." 28

U.S.C. §§ 2241(c)(3) and 2254(a).  Therefore, violations of state law and procedure

which do not infringe specific federal constitutional protections are not cognizable

claims under Section 2254. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480

(1991).  A prisoner has no right under the federal constitution to earn or receive

sentencing credits. *See Moore v. Hofbauer,* 144 F. Supp. 2d 877, 882 (E.D. Mich.

2001)(citing *Hansard v. Barrett,* 980 F. 2d 1059, 1062 (6th Cir.1992)).  Because

petitioner's claim challenges the interpretation and application of state crediting

statutes, the claim is noncognizable on federal habeas review. *See Howard v. White,*

22

*Sandoval v. Woods,* 2:10-CV-11444

76 Fed. Appx. at 53; *See also Grays v. Lafler,* 618 F. Supp. 2d 736, 747 (W.D. Mich. 2008). Petitioner is not entitled to habeas relief on his seventh claim.

### G. A certificate of appealability.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

The Court will deny a certificate of appealability, because jurists of reason would not find the Court's resolution of the claims to be debatable.

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v.*

23

*Sandoval v. Woods,* 2:10-CV-11444

*Youngblood*, 116 F. 3d 1113, 1115 (5th Cir. 1997)).  Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *Id.*

### IV. CONCLUSION

For the reasons stated above, this Court concludes that Petitioner Sandoval is not entitled to federal-habeas relief on the claims presented in her petition.

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus and the amended petition for writ of habeas corpus are **DENIED WITH PREJUDICE**. (Dkt.## 1, 9).

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.   IT IS FURTHER ORDERED that petitioner will be granted leave to appeal *in forma pauperis.*

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated:  May 29, 2013

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on May 29, 2013, by electronic and/or ordinary mail.

s/Catherine A. Pickles
Judicial Assistant